UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-81536-CIV-COHN/SELTZER

FDIC, as Receiver for Ameribank, Inc.,

             Plaintiff,

vs.

BRISTOL HOME MORTGAGE LENDING, LLC,
a Florida Limited Liability Company, and
HARVEY KOPELOWITZ,

             Defendants.
_____/

## OMNIBUS ORDER ON PENDING MOTIONS

**THIS CAUSE** is before the Court on (1) FDIC's, as Receiver for Ameribank, Inc.,

("FDIC") Motion to Strike Amended Affirmative Defenses [DE 37]; Defendants' Motion for

Leave to Add Affirmative Defense of Payment [DE 44]; Defendant Bristol Home Mortgage

Lending, LLC's ("Bristol") Motion for Leave to File Counterclaim [DE 59]; FDIC's Motion for

Substitution of Party Plaintiff and Substitution of Party Counsel [DE 51]; and the Motions for

Continuance of Trial [DE's 38 & 58] filed by Defendants and LNV Corporation ("LNV").  The

Court has considered the argument presented by counsel on July 30, 2009, the Motions,

Oppositions, Replies, related exhibits, the record, and is otherwise advised in the premises.

### I. BACKGROUND

On June 24, 2008, Ameribank, Inc. ("Ameribank") brought this action in state court

asserting breach of contract claims against Defendants Bristol and Harvey Kopelowitz.  On

September 19, 2008, the FDIC was appointed as receiver for Ameribank and was substituted

as Plaintiff on December 16, 2008.  On December 18, 2008, the FDIC removed the action to

this Court.

The Complaint alleges that Ameribank and Bristol entered into a promissory note for a line of credit in the amount of $1,000,000.  Thereafter, these parties entered into a Change in Terms Agreement which increased the line of credit under the promissory note to $1,950,000. Defendant Kopelowitz unconditionally guaranteed payment of the modified note.  As a result of alleged defaults by Bristol, Plaintiff seeks judgment in the amount of $1,950,000. Defendants and the FDIC are also involved in another action, filed on the same day, arising out of a different and much more complicated series of transactions surrounding a Mortgage Loan Sale and Servicing Agreement.  (See Case No. 08-81535-CIV-MARRA.)

Early in the litigation, Defendants moved to consolidate this case with Case No. 08-81535-CIV-MARRA.  Judge Marra denied the motion finding:  "Although some of the parties are the same in the two cases, the cases vary significantly in terms of the issues involved, their complexity, and their scheduled track to trial."[1]  The case before Judge Marra is set for trial on April 15, 2010, whereas the case before this Court is set for trial on September 29, 2009.

According to Plaintiff, "Defendants have continually sought to conflate and complicate this action with the more complex issues in the other action."  (DE 66 at 2.)  Plaintiff asserts that the Defendants have sought to inject issues from the other action by "raising them as Amended Affirmative Defenses, which are subject to a pending motion to strike, and most recently, moving to file an Amended Counterclaim that is substantially identical to their counterclaim in the other action."  (Id.)

In addition, the FDIC conveyed its interest in this action to LNV and there is a Motion for

---

[1]      It should be noted that Defendants filed a renewed motion to consolidate which is currently pending before Judge Marra.

Substitution of Party Plaintiff and Substitution of Plaintiffs' Counsel [DE 51] pending before the Court.  Defendants and LNV have also filed separate motions to continue the trial date. Defendants' request for an extension relates to its motion to add the counterclaim discussed above.  Defendants argue that the potential damages involved in the counterclaim could "exceed the amount claimed by the FDIC."  (DE 38 at 2.)  Defendants propose that the trial date should be rescheduled for December 2009 or shortly thereafter.  LNV filed a motion requesting that the trial be continued until January 2010 in order to allow LNV to familiarize itself with the case and conduct discovery.

All parties came before the Court on July 30, 2009.  After considering the argument of counsel and reviewing the submissions of the parties, the Court found that:  (1) the FDIC's Motion to Strike shall be granted with respect to all Defendants' Affirmative Defenses which implicate issues related to the case before Judge Marra; (2) Defendant will not be granted leave to add the Affirmative Defense of payment; (3) Bristol's Motion to file an Amended Counterclaim shall be denied; (4) the Court will stay any judgment obtained by Plaintiff in this action until the action before Judge Marra is resolved; (5) LNV shall be substituted for the FDIC as Plaintiff; and (6) the trial date will be continued until January 2010.  Each of the foregoing findings is discussed in greater detail below.

## II.  ANALYSIS

1.  **Plaintiff's Motion to Strike Affirmative Defenses**

The FDIC filed a Motion to Strike Bristol and Kopelowitz's Amended Affirmative Defenses [DE 37] seeking to strike all eight Affirmative Defenses raised by Defendants. Defendants' Response states that "Defendants agree to withdraw the Fourth, Fifth and Six[th]"

Affirmative Defenses."  (DE 40 at 8.)  The Response opposes the Motion to Strike with respect to the remaining Affirmative Defenses.

Affirmative defenses are subject to the general pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  Rule 8(b)(1)(A) requires that a party "state in short and plain terms its defenses to each claim asserted against it."  Fed. R. Civ. P. 8(b)(1)(A).  Although Rule 8 does not obligate a defendant to set forth detailed factual allegations, a defendant must give the plaintiff "fair notice" of the nature of the defense and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).  Rule 12(f) provides that a court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Generally, motions to strike are disfavored and "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties."  Carlson Corp./Southeast v. School Bd. of Seminole County, 778 F. Supp. 518, 519 (M.D. Fla. 1991).  "On the other hand, weeding out legally insufficient defenses at an early stage of a complicated lawsuit may be extremely valuable to all concerned in order to avoid the needless expenditures of time and money in litigating issues which can be seen to have no bearing on the outcome."  First Specialty Ins. Corp. v. GRS Mgmt. Assocs., 2009 U.S. Dist. LEXIS 68617, *6 (S.D. Fla. July 20, 2009).

### A.    First Affirmative Defense: Failure to Provide Notice

The First Affirmative Defense states that the "Plaintiff failed to satisfy conditions precedent in the form of providing notice and opportunity to cure."  (DE 33 ¶ 1.)  The FDIC argues that Defendants' First Affirmative Defense was waived pursuant to the agreements attached to the Complaint.  (See DE 37 at 4-5.)  Specifically, the FDIC argues that Bristol

4

entered into the Change of Terms Agreement, dated April 8, 2003, which provides that "Borrower (Bristol) and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor."  (Id. at 4.)  The FDIC also argues that Kopelowitz entered into the Commercial Guaranty in which he "absolutely and unconditionally guaranteed and promised to pay Ameribank upon demand" and specifically waived the right to notice.  (Id. at 4-5.)

Defendants argue that the FDIC's "[r]eliance [on] the Change of Terms Agreement is incorrect because the language that the FDIC cites is limited to payment defaults, which is not the subject of the affirmative defense."  (DE 40 at 2.)  Instead, Defendants point to the Business Loan Agreement, which includes a subsection entitled "Right to Cure," and argue that "[t]here was clearly a requirement of notice and opportunity to cure and Defendants contend no such notice or opportunity was provided."  (DE 40 at 2.)

The Court finds that the First Affirmative Defense provides Plaintiff with fair notice of the grounds upon which it rests and the Defense is related to the controversy before this Court.  In addition, the Court finds that the determination of which agreement controls the specific circumstances presented by this case should be reserved for a later stage in the litigation. Accordingly, the Court will not strike the First Affirmative Defense.

### B.    Second Affirmative Defense: Failure to State a Claim

The FDIC states that "a defense that merely points out a defect in the Plaintiff's *prima facie* case is not an affirmative defense at all" and "must be stricken."  (DE 37 at 5.)  The FDIC is correct that the Second Affirmative Defense, although labeled an affirmative defense, alleges a defect in Plaintiff's *prima facie* case.  In other words, the assertion in Defendant's

Answer is a denial of Plaintiff's claim rather than an affirmative defense.  See Premium Leisure, LLC v. Gulf Coast Spa Manufacturers, Inc., No. 8:08-cv-1048-T-24 EAJ, 2008 WL 3927265, at *3 (M.D. Fla. Aug. 21, 2008).  However, the FDIC is not correct that the foregoing requires the Court to strike the defense.

Where a party labels a specific denial as a defense in its pleadings, courts will generally treat the defense as a denial.  "In attempting to controvert an allegation in the complaint, a defendant occasionally may label his negative averment as an affirmative defense rather than as a specific denial."  5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1269 (3d ed. 2004).  When this occurs, the proper remedy is not to strike the claim, but instead to treat the claim as a specific denial.  Home Management Solutions, Inc. v. Prescient, Inc., No. 07-20608-CIV, 2007 WL 2412834, at *3 (S.D. Fla. Aug. 21, 2007); Ohio Nat'l Life Assurance Corp. v. Langkau, No. 3:06-cv-290-J-20MCR, 2006 WL 2355571, at *2 (M.D. Fla. Aug. 15, 2006).  Therefore, the Court will treat the Second Affirmative Defense as a denial and will not strike it.

### C.    Third Affirmative Defense: Set-Off

The Motion to Strike argues that "Defendants seek a set-off against damages claimed and alleged by BRISTOL in a completely separate lawsuit against the FDIC."  (DE 37 at 5.)  Moreover, "such allegations of set-off have no relationship to KOPELOWITZ, individually, or the Commercial Guaranty that he executed."  (Id.)  In addition, the FDIC notes that the Defendants' claim for set-off is "properly characterized as a permissive counterclaim under Federal Rule of Civil Procedure 13(b)."  (Id. at 6.)  In response, Defendants assert that "[i]f Ameribank owes Bristol money under one contract, and Ameribank is owed money under another contract between the parties, there is a basis for set-off."  (DE 40 at 6.)

6

The Court will grant the Motion to Strike with respect to the Third Affirmative Defense to ensure that this action does not infringe upon the issues before Judge Marra.  The Court will, however, stay any judgment in this case until the related action before Judge Marra is resolved to eliminate any potential prejudice to Defendants.

### D.      Seventh and Eighth Affirmative Defenses: Failure to Mitigate Damages

The FDIC argues that Defendants' Seventh and Eighth affirmative defenses are based on an agreement that "bears no relationship to the subject lawsuit."  (DE 37 at 10.) Defendants describe the basis of these Affirmative Defenses as follows:

> Defendants intend to establish that Ameribank in fact began actions to utilize collateral to reduce the amount outstanding on the Line of Credit.  Ameribank was also servicing the CRA loans, which provided a source of money that belonged to Bristol under the Mortgage Loan Sales and Servicing Agreement that was being used by Ameribank to reduce the amount outstanding on the Line of Credit.  Assuming that Ameribank sufficiently performed either of these events, then assets existed to avoid losses claimed by the FDIC.

(DE 40 at 9.)

Here again, the Defendants seek to inject issues into this litigation based on agreements that are at the center of the case before Judge Marra.  Accordingly, the Court will grant the Motion to Strike with respect to the Seventh and Eighth Affirmative Defenses.

### 2.      Defendants' Motion for Leave to Add Affirmative Defense of Payment & Bristol's Motion for Leave to File Counterclaim

Defendants' Motion states that "the payment defense is linked to the pending setoff defense based on Ameribank's breach of the Mortgage Loan Sales and Servicing Agreement." (DE 44 at 2.)  Plaintiff contends that "Defendants' attempts to extinguish or reduce the amounts due and owing Plaintiff by virtue of an unrelated agreement between BRISTOL and Ameribank, Inc., does nothing more than to reclassify its current defenses of set-off.  Such

claims of 'Payment' have no bearing on the instant lawsuit involving a promissory note and guaranty."  DE 47 at 3.)

The Court will deny Defendants' Motion for Leave to Add Affirmative Defense of Payment in order to limit the claims before this Court to the promissory note and guaranty. Likewise, the Court will deny Bristol's Motion for Leave to File Counterclaim because Bristol's proposed counterclaim arises out of the Mortgage Loan Sale and Servicing Agreement.  As discussed, the Court will stay any judgment in this action pending resolution of the case before Judge Marra to limit any potential prejudice to the Defendants.

**3.     Motion for Substitution**

The FDIC filed a Motion for Substitution of Party Plaintiff and Substitution of Party Counsel [DE 51] which seeks to replace the FDIC, as Plaintiff, with LNV.  The Motion states that "Plaintiff FDIC has conveyed and assigned its interest in the subject of this action to LNV." (DE 51 at 1.)  In addition, the Motion requests that Ruden, McClosky, Smith, Schuster & Russell, P.A., LNV's attorneys, be substituted as lead counsel.

Defendants filed a Response raising a number concerns.  Defendants' concerns fall into two categories:  (i) issues relating to litigation, and (ii) issues relating to the Loan Sale Agreement between LNV and FDIC.  Defendants' concerns relating to the litigation include:

- The Motion "does not provide any factual support on which to have the Court rely in deciding whether the FDIC has in fact conveyed and assigned its interest in the subject action to LNV."  (DE 61 at 1.)

- The Motion "does not clearly indicate whether the FDIC has retained any interest in the claims."  (Id.)

- "Defendants oppose the FDIC being substituted entirely because the FDIC's participation is essential to this case" because "the FDIC as Receiver for Ameribank has the possession, custody, and control of documents that the Defendants need to support their denials of liability and their affirmative

defenses." (<u>Id.</u> at 2.)  Defendants add that "the testimony of FDIC personnel involved in the Receivership is believed to be highly germane to those issues." (<u>Id.</u>)

- "Removal of the FDIC is likely to prompt an argument from LNV that the Defendants cannot pursue certain defenses in the case at bar." (<u>Id.</u>)

Further, the Response states that Defendants have reviewed redacted versions of the "documents which purport to memorialize the agreement between the FDIC and LNV as to the subject promissory note and guaranty." (<u>Id.</u> at 3.)[2]  Based on that review, Defendants raise the following concerns based on the Loan Sale Agreement:

- "The contract does not clearly indicate whether the guaranty which is the subject of the claim against Kopelowitz was also purchased, but Defendants assume that it was part of the transaction.  Whether it has should be made clear to the Court by the FDIC and LNV." (<u>Id.</u> at 3.)

- The fact that the agreement was entered into on February 12, 2009 and no action was taken to substitute LNV "until the eve of the current discovery cutoff of July 2, 2009, should be of great concern for the Court." (<u>Id.</u> at 4.)

- "Various provisions of the Loan Sale Agreement . . . suggest that the FDIC still has an interest in the subject loan." (<u>Id.</u> at 5.)

  - For example, Defendants argue that the Loan Sale Agreement (1) provides that adjustments to the purchase price of the loans can still be made, (2) required LNV to move to substitute itself or provide notice to Defendants sooner than it did, and (3) places conditions on LNV's ability to settle this case. (<u>Id.</u> at 5-7.)

Based on all concerns raised in the Response, Defendants argue that the Court should deny substitution.  "Although Defendants believe that joinder is in order, they request that, at a minimum, this Court should condition the substitution of LNV as the party plaintiff on the FDIC's prior compliance with outstanding discovery obligations." (<u>Id.</u> at 7.)

---

[2]     Defendants filed a copy of the Loan Sale Agreement, executed on February 12, 2009, by which "LNV [ ] became the owner of the subject promissory note as part of a large pool of loans purportedly sold by the FDIC." (DE 61 at 3.)

In Reply, the FDIC and LNV argue that "Defendants' Opposition assumes the unstated premise that they have already succeeded in introducing inextricable complexity and uncertainty into the action, from which they conclude that FDIC must remain in this action." (DE 66 at 2.)  The Reply then proceeds to specifically respond to Defendants' concerns relating to the litigation as follows:

- "FDIC has conveyed its interest in the subject of the action to LNV.  Defendants do not dispute that fact. . . .   Nothing in Defendants' litany of 'concerns' and 'interests' denies that FDIC has conveyed its interest in <u>the claims in this action</u> to FDIC, such that LNV is the real party in interest, and FDIC is not."  (<u>Id.</u> at 2-3) (emphasis in original.)

- Continued participation of the FDIC is not essential to this case.  "On the contrary, since FDIC no longer holds the note and guaranty and the other loan documents, its participation is not necessary."  (<u>Id.</u> at 3.)

- The FDIC does not have to be a party for Defendants to obtain discovery from it. Moreover, on July 20, 2009, Judge Seltzer granted Defendants' Motion to Compel, thus alleviating some of Defendants' discovery concerns.  (<u>Id.</u> at 3.)

- "Whether or not LNV has, or will raise, defenses or other positions different from FDIC remains to be seen.  Defendants cannot utilize a Rule 25(c) Motion to control the substantive course of the action."  (<u>Id.</u> at 4.)

- "Furthermore, Defendants do not explain why they would be better off with <u>two</u> plaintiffs, each with the anticipated <u>differing</u> defenses."  (<u>Id.</u> at 4) (emphasis in original.)

In addition, the FDIC and LNV set forth the following responses to the issues raised by Defendants regarding the Loan Sale Agreement:

- "The Loan Sale Agreement includes the guaranty [at issue]."  (<u>Id.</u> at 5.)

- "Defendants do not explain their 'concern' at the timing of the Motion."  (<u>Id.</u> at 5.) "Rule 25 appropriately imposes no timing consideration on substitution for transfer of interest under 25(c)."  (<u>Id.</u> at 6.)

- "Any adjustment of the purchase price of a loan . . . would be a matter between FDIC and LNV, and would not affect Defendants' obligations that are subject of the 'claim assigned.'"  (<u>Id.</u>)

10

- "Whether or not LNV complied with the Loan Sale Agreement by notifying Defendants has no effect on Defendants' obligations on the note and guaranty in this action.  They are not parties or beneficiaries of the Loan Sale Agreement." (Id. at 7.)

- "Section 5.20 itself readily answers Defendants' 'concern' about whether LNV can settle the case.  Defendants actually quote the section, which clearly says that if LNV settles, the Defendants shall release Ameribank and the FDIC as well, and if LNV fails [to obtain such a release], LNV must hold FDIC harmless from any resultant expense.  Here again, this is an obligation and right among LNV and FDIC inter se; it is immaterial to Defendants in this action."  (Id. at 7-8.)

In sum, the Reply argues that "[i]f LNV is not substituted for FDIC, both LNV and FDIC will continue as 'Plaintiffs', but FDIC will have no claim on which it is seeking relief . . . .  The only role of FDIC would be as a counterdefendant in Defendants' counterclaim on the loan documents that are at issue in the other action."  (Id. at 9) (emphasis in original.)

The Motion for Substitution is governed by Rule 25(c) of the Federal Rules of Civil Procedure which provides:

> (c) Transfer of Interest. If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.

Fed. R. Civ. P. 25(c).  "Substitution under Rule 25(c) is purely a matter of convenience, and regardless of whether substitution is ordered, the respective substantive rights of the transferor or the transferee are not affected."  Barker v. Jackson Nat. Life Ins. Co., 163 F.R.D. 364, 365 (N.D. Fla. 1995) (citing Minnesota Mining & Mfg. Co. v. Eco Chem, Inc., 757 F.2d 1256, 1263 (Fed. Cir. 1985)).  "Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands."  Matter of Covington Grain Co., Inc., 638 F.2d 1362, 1364 (5th Cir. 1981).

The disposition of a motion under Rule 25(c) is committed to the sound discretion of the trial court.  Virgo v. Riviera Beach Associates, Ltd., 30 F.3d 1350, 1357 (11th Cir. 1994).  The

11

Court may in its discretion order that the original party continue the action alone, that the transferee be substituted for the original party, or that the transferee be joined as an additional party.  Id.  Even if not named, successors in interest are always bound by the judgment; therefore, substitution of parties pursuant to Rule 25(c) is never mandatory.  Kloster Speedsteel AB v. Crucible, Inc., 793 F.2d 1565, 1582 (Fed. Cir. 1986).  "The decision to order substitution or joinder is to be made by considering how the conduct of the lawsuit will be most facilitated."  Federal Deposit Ins. Corp. v. Tisch, 89 F.R.D. 446, 448 (E.D.N.Y. 1981).

The Court finds that the Motion for Substitution should be granted.  The Court is satisfied that the FDIC has conveyed its interest to LNV such that LNV is now the proper Plaintiff in this action.  Moreover, the Defendants may obtain discovery from the FDIC whether it is a party to the action or not.  Finally, given the fact that the Court has denied Defendants' efforts to raise a counterclaim against the FDIC, there is no need for the FDIC to remain as a party.

**4.    Motions for Continuance**

At oral argument, all parties expressed a need for additional time to conduct discovery. In addition, LNV has requested more time to familiarize itself with the case.  Therefore, the Court finds that there is good cause to continue to trial date and the pending Motions to Continue shall be granted.

### III.  CONCLUSION

In light of the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.    The FDIC's Motion to Strike Defendants' Amended Affirmative Defenses [DE 37] is **GRANTED in part** and **DENIED in part**.

      a.      The Motion to Strike is granted with respect to Defendants' Third, Fourth, Fifth, Sixth, Seventh and Eighth Affirmative Defenses.

      b.      The Motion to Strike is denied with respect to Defendants' First and Second Affirmative Defenses.

2.     Defendants' Motion for Leave to Add Affirmative Defenses of Payment [DE 44] is **DENIED**.

3.     Bristol's Motion for Leave to File Counterclaim [DE 59] is **DENIED**.

4.     The Motion for Substitution of Party Plaintiff and Substitution of Plaintiff's Counsel [DE 51] is **GRANTED**.

5.     Defendants' Motion for Continuance of Trial [DE 38] and LNV's Motion for Continuance of Trial [DE 58] are **GRANTED**.  The Court shall enter a separate Order resetting the trial date and pre-trial deadlines.

       **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 13th day of August, 2009.

JAMES I. COHN
United States District Judge

Copies furnished to:

Counsel of record via CM/ECF